Plaintiff, as administratrix, brings this suit against defendant on a promissory note in the sum of $200 signed by defendant, W.M. Bagwell, and payable to his mother, the decedent, Mrs. A.J. Bagwell.
In answer, defendant admitted the execution and delivery of the note sued on, and, assuming the position of plaintiff in reconvention, claimed the sum of $282.94 for services rendered to decedent before and at the time of her death.
The note sued on was subject to credits of two payments in the amount of $10 made February 11th, 1941, and $16 made March 28th, 1942.
The services for which defendant made claim in his reconventional demand consisted specifically of charges for 30 trips made by defendant in transporting Mrs. A.J. Bagwell from her home to Ruston, some eight miles distant, for medical treatment, at $5 per trip; charges of $25 per week for four weeks for nursing the deceased while she was bedridden; and $12.50 per week for a period of two weeks while the deceased was convalescing. The balance of the $282.94 claimed by defendant in his reconventional demand is alleged to have been made up by telephone charges made at the time of the death of Mrs. Bagwell for the purpose of notifying the other children.
On trial plaintiff offered in evidence the promissory note sued on and rested her case. The only evidence as to defendant's reconventional demand was defendant's testimony, and, after the case was closed, counsel for plaintiff called attention of the trial court to the provision of Act No. 11 of 1926 requiring testimony of at least one credible witness to establish a debt against a decedent. Counsel for defendant filed a motion for a new trial, which was granted, and, on the second trial, defendant introduced the testimony of a number of witnesses in the attempt to substantiate his reconventional demand. Judgment was rendered in favor of plaintiff for the amount of the note, and in favor of defendant for the full amount of his reconventional demand, from which judgment plaintiff has appealed.
[1] This case involves purely and simply a question of fact, and it is well established that the judgment of a lower court on a question of fact will not be disturbed on appeal except in cases of manifest error. Careful study of the record in this case has convinced us that the judgment of the lower court is manifestly erroneous and should be set aside in the interest of strict justice as between the parties.
There is no question as to liability of the defendant upon the promissory note, which is the basis of plaintiff's demand. The defendant *Page 771 
admitted the obligation, and, while there was some implication in his testimony that his mother had promised to remit the amount due, there was no corroboration, nor, indeed, did defendant himself make any serious effort to press this claim. There is no question as to the correctness of that part of the judgment on the main demand in favor of plaintiff.
[2, 3] In the position of plaintiff in reconvention, it is well settled that a defendant bears the burden of establishing his claim, and, in this instance, in our opinion, defendant has utterly failed to discharge this burden of proof.
Defendant, W.M. Bagwell, and his wife lived at Choudrant, Louisiana, about eight miles from Ruston, as also did his mother, Mrs. A.J. Bagwell. Mrs. A.J. Bagwell did not make her home with her son, W.M. Bagwell, but lived nearby. Defendant and his witnesses testified that during the years 1941, 1942 and 1943 his mother was in poor health, and it was necessary for her to make visits to the doctors' office in Ruston at more or less frequent intervals during this period.
On the first trial of this case, defendant testified positively that during the years 1941, 1942 and 1943 he and his wife transported his mother in his automobile from Choudrant to Ruston and return on 30 different occasions. During the first part of this period, that is, from 1941 until January of 1942, according to defendant's testimony, his mother was in the care of Dr. M.T. Green, and from January, 1942, until the time of her death she was treated by Dr. J.B. Harris. Pertinent extracts from the testimony of plaintiff in this connection are quoted as follows:
"From October 13, 1941, until January, 1942, I made 10 trips to Dr. Green's office. The last trip we made was in January, 1942. She quit Dr. Green in January of 1942 and went over to Dr. Harris as her family doctor."
* * * * * *
"Q. Now, up until the time of her death, Mr. Bagwell, how many times did you carry Mrs. Bagwell to Dr. Harris' clinic? A. 20 trips."
On cross-examination, when interrogated as to how he had arrived at the exact number of trips, defendant testified:
"I went to Harris' records and Dr. Green's records for these dates I give you just now."
* * * * * *
"Q. Do you have any records besides the doctor's records to refresh your memory? A. I didn't put the dates down every day we came. I am just taking the doctor's records."
An attempt was made to corroborate this testimony of the defendant by the testimony of his wife, Mrs. W.M. Bagwell. This witness testified positively that she and her husband made at least 30 trips. But, on cross-examination, the witness admitted that her testimony was based upon the statement of her husband that he had procured the information from the doctors' books.
Dr. Green was called as a witness for defendant and testified that he did not remember Mrs. A.J. Bagwell as one of his patients. The doctor did remember Mr. and Mrs. W.M. Bagwell being in his office a number of times, but did not recall that they were with their mother. Dr. Green's secretary, a Mrs. Clark, called as a witness for plaintiff, testified that she had examined Dr. Green's records; that the name of Mrs. A.J. Bagwell appeared on his records only one time, although it was possible that she had made other visits. Both Dr. Green and Mrs. Clark testified positively that neither of them had furnished Mr. W.M. Bagwell with any information as to the number of times Mrs. A.J. Bagwell had been treated.
Mrs. Riser, secretary to Dr. J.B. Harris, testified that she could find a record of only about six visits made by Mrs. A.J. Bagwell to Dr. Harris, but qualified this statement with the admission that Mrs. Bagwell could have been to Dr. Harris for treatments on a number of other occasions upon which she might have paid cash, and, therefore, her name would not have appeared in the records. However, Mrs. Riser testified that she had not, and that neither she nor Dr. Harris could have given Mr. W.M. Bagwell information as to the exact number of trips made by Mrs. Bagwell to the office of Dr. Harris.
The testimony of the witnesses to which reference has been made thoroughly impeaches the testimony of the defendant, Bagwell, as to the source of his information fixing the number of trips made to the two doctors who treated his mother, and renders his testimony on this point unworthy of belief.
There can be no question but that the defendant and his wife on a number of occasions took his mother to Ruston for treatment by or consultation with one or *Page 772 
the other of the doctors named. This fact may be held to have been established quite apart from the testimony of defendant and his wife by the testimony of neighbors who had seen them passing by on the way to or from Ruston, taken in connection with the testimony of the doctors' secretaries that Mrs. Bagwell had visited the doctors' offices a number of times. But, it must be borne in mind that plaintiff is suing for a fixed amount based upon a specific charge per trip, and the burden is upon him to establish the number of trips actually made. To arrive at an estimate or an approximation is not sufficient.
Defendant asks in his reconventional claim recovery of a charge of $5 per trip. Pretermitting consideration of the question as to any number of trips actually established, it is necessary that defendant establish some acceptable basis for the charge made. This basis could only have been fixed by agreement with his mother, or, failing this, by proof of the value of the services rendered. Defendant asserted that his mother had agreed to the charge, but he completely failed in his attempt to establish this fact. The only evidence on this point was the testimony of defendant and his wife, and, again, we refer to extracts from the testimony of these two witnesses. On direct examination defendant testified:
"Q. What did you charge for each trip, Mr. Bagwell? A. We made a charge of $5.00 per trip for our time and the use of our car and the time lost bringing her to Ruston.
"Q. Was that agreeable to her? A. It was. She always sent for us to come and get her and bring her.
"Q. She understood you were charging, her? A. Yes. Understood she would be glad to pay for the trips."
On cross-examination:
"Q. How did you arrive at the figure of how much you would charge? A. My time or my wife's time usually takes a half a day to come here and get a treatment, they are generally crowded, my time and my wife's time and the use of the car I think a fair price would be $5.00 for half a day.
"Q. Did you tell her Mama I am not going to charge you anything? A. Mother and I worked together quite a bit on those things. She always went the bill for almost everything she wanted. I was the only one available. Anything she wanted she would come to me. We never was unreasonable, neither one of us, but in harmony.
"Q. During her lifetime did you ever present her a bill for $5.00 for bringing her to see the doctor? A. No. I usually just say Mother you can pay me whatever you want to."
Defendant's wife testified that she never had any understanding, nor was she ever present with her husband when any agreement was made between him and his mother. These matters, according to the witness, were handled privately between her husband and his mother, and her only information was what her husband told her.
With reference to the amounts claimed for nursing, the testimony of defendant and his wife followed the same vague pattern as their testimony with reference to charges for the automobile trips. No attempt was made to fix any fair value of the services claimed to have been rendered. The record is absolutely silent as to the value of the time of plaintiff and his wife, nor are we enlightened with reference to any details as to the actual nature of the services rendered which would justify the establishment of any value whatsoever. What the earnings of plaintiff and his wife may have been during this period, we do not know, and, therefore, the value of their time cannot be computed. Indeed, if we were even slightly inclined to sustain plaintiff's claim, it would be necessary to remand this case for evidence as to the value of the services rendered before any equitable basis for a judgment could be found.
Analyzing defendant's case in support of his claims, we find that his attempt to establish the number of trips, which served as the basis for the major part of his claim, has utterly failed; his own testimony on this point has been discredited, and the little corroborative testimony of his wife has been determined to be hearsay.
Defendant's attempt to establish an agreement with his mother is based upon the weakest conceivable character of evidence, namely, the testimony of a son as to sporadic conversations with his deceased mother. Even defendant did not claim any definite understanding or agreement, but rested his testimony on the ground that his mother had agreed to pay anything he wanted to charge. It is clear to us that the charges for transportation and for nursing were arrived at by an agreement, it is true, but an agreement between defendant and his wife, in which his mother *Page 773 
had no part, and there is no proof she was informed as to any detail.
[4] The only remaining item in defendant's list of claims is the sum of $7.94, claimed to be due for telephone charges made at the time of his mother's death for the purpose of notifying her other children of her demise. We know of no theory under which this charge could be regarded as a proper claim against the estate of the decedent. These acts, which were, or certainly should have been, performed in response to the obligations of filial love prompted by ordinary feelings of respect, should not be considered as legal claims justifying reimbursement of the insignificant sum involved. Further, in support of this item, the record contains only the uncorroborated testimony of the defendant.
For the reasons assigned, the judgment appealed from is amended by rejecting defendant's reconventional demand, and, as amended, the judgment is affirmed. All costs of both courts to be borne by defendant.