ELLIS, Judge.
On March 7, 1956, Wright Adams, defendant herein, entered into a written contract with the plaintiff[1] to paint the ex *598 terior- and interior, and do the sheetrock work on the home of Dr. C. B. Pennington, which Adams had contracted to construct. Prior to the completion of the house a difficulty or dispute arose between the plaintiff and defendant which resulted in the latter employing Adam Lanehart to do certain work, which they contended should have been done by the plaintiff under his contract. Plaintiff, on the other hand, contended that he had completed the terms of his contract and that the defendants were indebted to him for extras in the amount of $377.20. As the result of the failure to pay on demand, plaintiff filed a lien and the present suit. In this suit plaintiff set forth numerically eighteen separate items which he claimed were extras, which he was called upon to do by the architect on the Pennington home totaling the $377.20.
The defendant by way of answer in supplemental answer denied owing the plaintiff any amount and by way of reconven-tional demand alleged that they had paid the full contract price of $3,250 to' the plaintiffs plus the sum of $838.50 for extras or a total of $4,088.50 paid to plaintiff. In addition, defendants alleged the ' plaintiff failed to perform the contract or deliver the work by virtue of the fact that it was imperfect, defective and showed a lack of workmanlike methods, and for that reason the defendant Wright Adams was forced to employ Adam J. Lanehart, painting contractor, to correct the imperfect and defective work, and in connection with such allegations set forth fifteen specific amounts together with a description of the work done by Lanehart for such amounts totaling $830 for which they asked judgment as plaintiffs in reconvention.
After trial, the learned judge, with written reasons, reviewed the evidence given by the various witnesses, the claims of plaintiff and defendants in detail. The lower court took up the special items numerically as claimed by the plaintiff and defendants, plaintiffs in reconvention, and discussed the testimony as to each and allowed the plaintiff $133 of the $377.20, which he claimed as extras, and allowed the plaintiffs-in reconvention the sum of $666.64, which on the trial was the amount stipulated to-have been paid by the defendants, plaintiffs-in reconvention, to Lanehart for work that Navarre should have done or did in an un-workmanlike or defective manner under his. contract. From this judgment the plaintiff has appealed.
This case presents purely a question of fact, although counsel for the plaintiff argued that it also involved the question of law, which he contended the lower court had disregarded in deciding the case, viz.,, that a defendant who sets up a reconven-tional demand, has the burden of proof and must sustain it by a preponderance of' the evidence, citing the case of Stringfellow v. Nowlin Bros., 157 La. 683, 102 So. 869; Graham v. Hemard, 23 La.Ann. 769; Culbertson v. Cousin, 9 La.App. 198, 119 So. 548; Pillsbury Mills, Inc. v. Chehardy, 231 La. 111, 90 So.2d 797; Easterling v. Bagwell, La.App., 21 So.2d 770; Patout v. Bourriaque, La.App., 44 So.2d 238; Butler v. Bryant, La.App., 75 So.2d 519. The District Judge has shown by his-written reasons that he is of the opinion that the preponderance of the evidence supported the judgment, which he rendered in' favor of the plaintiff, and that which he-rendered in favor of the defendants in re-convention. After reading the briefs of" counsel and giving careful consideration to the entire record, we are of the opinion that the lower court was correct in its judgment, however, we believe that it is our-duty to discuss the alleged errors to this-judgment made by counsel for the plaintiff by way of argument and specifically in-his brief.
Counsel for plaintiff in his brief states that the “trial judge decided that only one-witness was worthy of belief, that witness, being the business partner of the defendant, plaintiff in reconvention. Yet the trial judge apparently found that witness unworthy of belief when in his testimony he-admitted that certain charges contained in the reconventional demand should not have- *599 been assessed to the defendant in recon-vention. Mr. Navo, though called as a witness for the plaintiff and defendant in re-convention, worked with Mr. Roussel on the house after plaintiff had left the premises but his testimony, favorable to the plaintiff and defendant in reconvention, was disregarded and that of Mr. Roussel, favorable to the defendant and plaintiff in re-convention was accepted. This, despite the fact that both Navo and Lanehart are similarly employed for Mr. A. J. Lanehart at present and despite the fact that Roussel was a voluntary witness for the defendant and plaintiff in reconvention, while Navo was called unexpectedly after the testimony of Roussel disclosed his identity.”
In making the decision to ignore the obviously disinterested testimony of Navo, the trial court stated:
“It is not conceivable to me that Mr. Popavas or Mr. Adams would undertake to do this work unnecessarily. * »
In his written reasons for judgment the District Judge discussed generally the testimony of the plaintiff and then that of Mr. Popavas, the architect, and we quote:
“I was impressed with the testimony of Mr. Popavas who, though now is in business with Mr. Adams but at the time of the contract was not so associated, was acting in the capacity as architect. I believe that a review of his testimony (beginning, at page 195 of the transcript) will reveal that he .attempted to be fair in his testimony ■ and I have concluded to accept same as a fair solution of this case.”
-The District Judge then took the plaintiff’s itemized claim from 1 through 18 and discussed each in detail as testified to by Mr. Popavas. After reading the testimony of Mr. Popavas, we are of the opinion that the District Judge was correct in- stating that this witness attempted to be fáir in his testimony, for he readily stated without any equivocation or hesitation, that some of the items were extras and that -plaintiff should be paid. In his testimony he also gave a full explanation of why it was necessary to re-do or refinish some of the work and why that done by the plaintiff was defective or unsatisfactory.
The District Judge, however, did not take his testimony alone for his written reasons show that he considered the testimony of all of the other witnesses. We again take the liberty of quoting:
“In addition to the testimony of Mr. Navarre, plaintiff offered the testimony of Mr. Gardner, Mr. Provost, Mr. Car-riere and Mr. Navo, while defendant offered, among others, the testimony of Mr. Popavas and the two workmen. for Mr. Lanehart, Mr. Hunter L. Roussel and Mr. Thomas Navo, who performed the work for which Defendant Adams paid and is seeking judgment herein in reconvention. A review of Mr. Roussel’s testimony substantiates the claim of the Defendant Adams for the items sued for in the recon-ventional demand. Mr. Navo was called by Plaintiff and he, apparently, •as will be revealed by a reading of his testimony, sought to maintain that the work done by Roussel and himself, especially any reputtying and reworking panelling, was not because of the poor workmanship of the Plaintiff, but resulted from ‘dust and stuff’ spotting ■the panelling in some instances. Furthermore, he was of the opinion that the work which he himself redid was originally done in a satisfactorily workmanlike manner and that his work did not result in any improvement.
“It is not conceivable to me that Mr. Popavas or Mr. Adams would undertake tó do this work unnecessarily and I am of the opinion that same was done -because of the improper workmanship of the Plaintiff,- *'■ *
From the above testimony we can clearly see that the District Judge never found or intimated that the testimony of Popavas, the architect, was unworthy of belief, for *600 the latter unhesitantly testified that the plaintiff was entitled to credit for some of the items, which the defendants claim in reconvention. In addition, we believe that Mr; Popavas’ testimony when in glaring conflict with Mr. Navo was entitled to the weight accorded by the District Judge as it was specific in contrast to generalized testimony by Mr. Navo.
Counsel argued that this home took such a long period of time to complete that some of the defects claimed were due to the ravages of time. The home was a large home and the testimony shows that it was begun in September 1955 and completed about January 1st of 1957. In addition there is no positive testimony that the time element brought about the defects claimed by the defendants in the work of the plaintiff. The plaintiff was requested “to straighten up the job” in December of 1956 and refused to do it.
Let us examine the argument in brief of counsel for plaintiff as to Item No. 1 and the error committed by the District Judge. Counsel states:
“Item Number One (1) was for One Hundred Eighteen and No/100 ($118.00) Dollars, for facias, door frames, window frames, window headers and posts. This extra was occasioned by a change in specifications requiring the change in the color of the paint and a substitution of marine paint for the fourth coat of outside paint. Ap-pellee contends that this work had to be redone because of poor workmanship on the part of appellant. The testimony of appellee’s witness, Mr. Pop-avas, fails to bear out this contention, as an extract from the record shows on Page 221 of the Transcript:
“ ‘Q. Now, you observed as you visited the house that he was using good material. * * * A. Well, certainly.
“ ‘Q. (continuing) and standard practices? A. And Standard practices.
“ ‘Q. Was the greater amount of soiling on that house those portions which were exposed to the drip of the roof than to those portions of the ten per cent that was soiled which was unexpected? A. I would say slightly, maybe. Let’s name if you want to name, but per cent, let’s give it twenty per cent.
“‘Q. Twenty per cent greater? A. Yes.’ ”
Counsel then quotes the testimony of the plaintiff on this point to the effect that the ■paint, which he put on this portion of the house was all right but they had some water stains which he thought had come off of the roof due to the fact that there was no roof on the house and the tarpaper faded on the “facias boards and they also have quite a few trees around there, it could have been the cause of the thing being soiled a little * * * ”, and the further testimony by this witness that the contractor, Adams had seen him priming the house and never objected to the manner in which it had been done and although he visited the job practically every day there were never any complaints by him to the plaintiff as to this, alleged defective or unworkmanlike painting.
Prior and subsequent to the testimony given by Popavas as quoted from counsel’s, brief, he testified with regard to this item as follows:
“Q. All right. Now Mr. Navarre testified that the ten per cent which you required to be re-done had turned black and I might add further, that he said that the roof on the house was not on and that the tar paper and the stain from the rain and weather stained the woodwork? A. I know—
“Q. Do you know that to be a fact ? A. I know that to be the truth that there was no roofing on the house. I know that it is these items that we pointed to him to do them over but one thing I point to, I want to point to, is that the work of Mr. Navarre’s was, *601 comparatively speaking, satisfactory up to a certain point and then for reasons unknown to me it ceased to be.
“Q. Well, would you answer my question, Mr. Popavas?
* * * * * *
“A. Well, where do we stand now? (The portion of answer read) (continuing) * * * I am answering your question in this respect, that this particular item here, it is work that had to be done during the finishing stages of the house. It is the last coat of paint that we put on a house in the very last stages of it. Now Mr. Navarre’s quality of work and for what reasons has changed so all of a sudden, that I don’t know. This last coat, not this particular one but the previous to it which was supposed to be the last coat didn’t prove satisfactory like the paint in other areas of the house. And I say, too, that in the same way that it was necessary to paint the facias which, according to you, were exposed and therefore soiled by the drippings of the unfinished roofing, I am wondering now how come those protected areas were soiled too, like the headers of the doors and the headers of the windows and the door frames, how come they were soiled; and my answer is simply this, that the paint didn’t show enough of a protective slick exterior finish, then I asked Mr. Navarre to improve that, suggesting even that he finish with Marine paint. He washed all these soiled areas as well as was possible because there still were remaining marks on the chalked painted surfaces which had chalked before it was their time. Before their time, I would say three or four years, due to thinning of the paint not only in the third coat, but obviously in the second coat, too. * * * ”
“Q. Would you now attribute the soilage due to the roof to the fault of Mr. Navarre? A. Well, certainly, I attribute that to the lack of roofing but ■on the other hand I attribute it to the lack of the receiving surface, to the lack of good finishing of the receiving surface. * * * ”
Thus we see that the witness gave a detailed explanation with full reasons for his believing the work on this particular item to be defective.
Able counsel has taken each item and discussed the entire brief and we deem it absolutely unnecessary that we go into such detail as we have carefully considered the entire record and the written reasons of the District Judge and find no manifest or obvious error and, in fact, believe that his judgment is correct and based upon preponderance of the evidence.
The reasoning and the judgment of the District Court is affirmed.
Affirmed.

. “March 7, 1956
“Contract
“Wright Adams
“Fairway Drive
“Baton Rouge, La.
“Dear Sir:
“I the undersigned contractor propose to furnish all labor and material for the completion of the following work:
“This work to be done one (1) residence being built by you on Stanford Avenue. All exterior to be of paint. All interior sheetrock to be taped, floated and plasterized and to receive one coat wall primer and two coats flat. All interior trim to receive one coat of enamel undercoater, one split coat, and one coat semi-gloss. All final colors to be selected by owner.,
“This is payable as work progresses for the sum of $3250.00
“Signed___
“Signed: (s) Wright Adams Louis Navarre
“Wright Adams Phone 5-1778”