No. 4177

Second Circuit

---

## CHICKASAW WOOD PRODUCTS CO. v. VAIL-DONALDSON CO.

---

(January 14, 1932. Opinion and Decree.)
(February 16, 1932. Rehearing Refused.)

---

Hudson, Potts, Bernstein & Sholars, of Monroe, attorneys for plaintiff, appellee.

Madison & Madison, of Bastrop, attorneys for defendant, appellant.

McGREGOR, J. This is a suit by the plaintiff against the defendant for the contract price of two carloads of keg heading. Both plaintiff and defendant are engaged in the manufacture and sale of heading and other wood products. Plaintiff is a Tennessee corporation, domiciled in the city of Memphis, while the defendant is an Indiana corporation, with a plant in Morehouse parish of this state, and a business office in St. Louis, Mo.

In its petition filed November 5, 1925, the plaintiff alleges that:

(1) On December 6, 1924, the defendant ordered from it one mixed carload of keg heading to contain 13,000 sets of varying sizes.

(2) This order was promptly acknowledged and was shipped in accordance with instructions, in the month of January, 1925.

(3) On March 21, 1925, an order for one mixed carload of No. 2 gum, oak, and ash heading of various sizes was placed with plaintiff by the defendant.

(4) This order was also accepted promptly and was shipped in due course and in accordance with instructions.

(5) The first invoice amounted to $1,468.48, the second to $1,470.01, and nothing was paid on either.

The total demand was therefore for $2,938.49, which ordinarily would give the Supreme Court jurisdiction of this appeal. In fact, the appeal was lodged in that court at first, but was transferred to this court for the reason that at the trial of the case in the lower court it developed that the plaintiff had realized a certain sum from the sale of one of the cars, which reduced the amount in controversy to less than $2,000.

Without filing any exceptions or pleas of any kind, the defendant filed its answer on March 5, 1926. In this answer, it denied owing any of the indebtedness claimed in plaintiff's petition. It admitted that it placed each of the orders exactly as alleged in the petition, and that they were accepted by the plaintiff, and that two carloads of heading were shipped upon the basis of the receipt of the orders, but that the heading shipped was of inferior grade and was not of the quality ordered. It is specially alleged and admitted that the orders did not set out in detail the grade and specifications of the goods ordered, but that each order contained the following stipulation:

"All cooperage bought subject to inspection rules of the Associated Cooperage Industries of America."

It is therefore contended that, since the heading was bought subject to inspection

of that association, its grade rules and specifications governed the quality of goods to be shipped in filling the two orders. Excerpts from the rules and regulations of the association which defendant claims should govern the quality and grade of heading in this case are copied in its answer.

Of the two cars of heading involved herein, one was shipped to Cleveland, Ohio, and is known as the Cleveland car, and the other was shipped to Philadelphia, Pa., and is known as the Philadelphia car. In refusing to admit liability on the Cleveland car, it is alleged that:

"This car was not of the grade ordered, for the reason that it contained a large quantity of what is known as 'glued stock,' said stock being glued instead of properly jointed, and that said glued stock was not ordered and is not permitted under the grade rules and specifications of the Associated Cooperage Industries of America."

It is then alleged and admitted that, *"without receiving or accepting said car"* (italics ours), the defendant sold and delivered it to the Cleveland Cooperage Company, subsequently absorbed by the Allied Barrel Company, and that the said Allied Barrel Company deducted $535.07 from the purchase price on account of the glued stock found in the car. It is then alleged that the plaintiff took up this glued stock and sold to other parties at a price unknown to it.

With reference to the Philadelphia car, it is alleged that it was bought by sample; that the stock shipped was not equal to the sample in grade, and that therefore it refused the car and denied liability for any portion of the purchase price. Then, as plaintiff in reconvention, it alleged that this car had been sold by it in advance at a profit of $69.91; that because it failed to be up to the grade of the sample it had lost this profit and had been put to an additional expense of $8.88 for telegrams. Judgment was prayed for against the plaintiff for these two sums.

In the alternative, the defendant prayed that, if the Cleveland car should be found to have been of the proper grade and delivered in accordance with contract, it, the defendant, should be credited with whatever amount the plaintiff received from the sale to other parties. Again, in the alternative, the defendant prayed that, if it should be held that the Philadelphia car was up to grade and delivered in accordance with contract, it be credited with whatever was realized by the plaintiff from its sale.

It is then alleged by defendant that, while the plaintiff's suit was brought in the name of "Chickasaw Wood Products Company," the orders of defendant in each case were directed to the "Chickasaw Cooperage Company," and that its answer was being filed upon the assumption that the two companies are one and the same. It is then suggested that the plaintiff amend its petition to show an appearance on the part of the Chickasaw Cooperage Company. It is specially averred that, if it should appear that the named plaintiff is not in fact the company with which defendant dealt, the right to withdraw the answer is reserved.

On March 21, 1927, the defendant filed a supplemental answer in which it added to and enlarged upon its reconventional demands by claiming the additional loss of $64.35 in profits on the Cleveland car.

On this same day, in accordance with the suggestion contained in the defendant's original answer, the plaintiff filed an amendment to its original petition and set forth that the Chickasaw Wood Products

Company and the Chickasaw Cooperage Company are one and the same, and that the plaintiff, as named in the petition, is the real party in interest. The defendant answered this amended petition on the same day by adopting its original answer in full.

After the answer was filed, but before trial, exceptions of no cause or right of action were filed, which were referred to the merits.

The trial of the case consumed three days, beginning March 21, 1927. On June 25, 1927, judgment was rendered in favor of plaintiff for $1,889.19, and suspensive and devolutive appeals were lodged in the Supreme Court by the defendant. Upon examination, it was found that less than $2,000 was involved, so the case was transferred to this court.

## OPINION

The errors of law and fact relied upon by the defendant, appellant, are stated in its brief and are as follows:

"(1) That the Court erred in not sustaining Defendant's Exception of No Right or Cause of Action and Defendant's Exception that Plaintiff was without interest to sue. If these exceptions should not have been sustained on the face of the papers, they should have been sustained after the hearing of testimony on the merits.

"(2) That the Court erred in permitting Plaintiff to amend its petition without restricting the amendment so as not to change the plaintiff and not to change the substance of the demand.

"(3) That the Court erred in admitting the testimony of the witness, R. A. Cabrey. taken by deposition addressed to any Notary Public and not to a particular Notary Public without requiring proof that the person executing the Commission was duly qualified, pages 30-36 and 58-59 of the Transcript.

"(4) That the judgment on the merits is contrary to the law and the evidence."

We discuss these in the order named: (1) Both of the orders of the defendant were addressed to the Chickasaw Cooperage Company at Memphis, Tenn., and both were accepted by Harry A. Wellford, as secretary, on letterheads showing both Chickasaw Wood Products Company and Chickasaw Cooperage Company. In testifying for the plaintiff, Wellford states that he accepted for the Chickasaw Wood Products Company. In its original answer the defendant admitted in so many words that both orders were accepted by the named plaintiff, and stated that its answer was based upon the assumption by it that the Chickasaw Wood Products Company and the Chickasaw Cooperage Company are one and the same. In its amended petition the plaintiff alleges that the two companies are one and the same; that the named plaintiff received and acknowledged the orders, and that they both were filled with merchandise belonging to it. In his testimony, Wellford, the secretary of the plaintiff, stated that all the business of the two companies was the same; that, as a matter of fact, the Chickasaw Cooperage Company was not engaged actually in the cooperage business and was not selling cooperage of any kind. It appears that all the property and stock in trade belonged to the plaintiff. The Chickasaw Cooperage Company was a name in memory only. The plaintiff formerly operated under that name and for business reasons changed its name to the Chickasaw Wood Products Company. Under the name Chickasaw Cooperage Company it became very popular. Many of the former customers were attached to and still address the plaintiff under its old name, and for that reason that name was retained on its letterheads. In the correspondence the two names appear to have been used indiscriminately and interchangeably by both plaintiff and defendant. Orders addressed to either name were accept-

ed and filled by plaintiff. With reference to the two orders involved in this suit, the defendant addressed several letters to the Chickasaw Wood Products Company and clearly recognized that company as the one with whom it was dealing. All correspondence by the plaintiff was written on stationery containing both names, and with plaintiff's name appearing first. To support its contention on this point, defendant cites and relies upon the case of Bayley Mfg. Co. v. Wilhelm Moss Co., 163 La. 439, 112 So. 38, 39. One sentence in the court's opinion in that case differentiates it from the case at bar. It is: "The Wilhelm Moss Company was not a party to the contract, and *did not afterwards assume any of the obligations or acquire any of the rights* of the Republic Company under the contract." (Italics ours.)

Just the opposite is true in the case at bar. The plaintiff *accepted and filled the orders, assumed all the obligations and acquired all the rights of the contracts.* All correspondence was carried on by it and in its name. The mere fact that in the beginning the orders were addressed to it under another name, which it carried on its stationery, does not affect its right to collect for the merchandise with which it filled these orders. Furthermore, in its answer, the defendant admits in both instances that these orders were accepted and filled by the plaintiff named in the petition. Then, as plaintiff in reconvention, it asks for judgment against this same plaintiff on the same contracts. This act alone waived all right to question the right of plaintiff to bring this suit. Sherer-Gillett Co. v. Bennett, 153 La. 304, 95 So. 777. Under the pleadings and the testimony, defendant's contention that plaintiff's suit should be dismissed for want of a right of action is untenable, and its exception was properly overruled.

(2) The plaintiff's amendment to its petition did not change the plaintiff, nor did it change the substance of the demand. It simply stated that the two companies were one and the same, and by implication it stated that, for all intents and purposes, when the plaintiff appeared as Chickasaw Wood Products Company, it was also appearing for Chickasaw Cooperage Company, to whatever extent it might have any interest. This amendment was filed in response to the demand made by the defendant in its original answer, and it could not be heard to object to its filing.

(3) In their brief, counsel for plaintiff admit that it was error to admit the testimony complained of. This is unimportant, however, as the conclusions we have reached do not depend on that testimony.

(4) The fourth and last examination of error involves a consideration of the case on its merits. In this discussion, we shall continue to refer to the two cars of heading as the Cleveland car and the Philadelphia car, respectively.

## THE CLEVELAND CAR

Defendant's complaint against this car is that it was not of the grade ordered in that it contained a large quantity of glued stock. The original order calls for "1 mixed car keg heading." There is nothing in the order itself to indicate that glued stock could not be used either in whole or in part in filling the order. In the order itself it is stipulated that all cooperage is bought subject to the inspection rules of the Associated Cooperage Industries of America. No evidence was offered to show that this car was ever inspected by any one under these rules. On the contrary, it is alleged and admitted by the defendant in its answer that it sold and delivered the car to the Cleveland

Cooperage Company without inspection or examination. Defendant then testifies that the Cleveland Cooperage Company took charge of the entire car and paid for it, except that it deducted from the purchase price the sum of $535.67, on account of the glued stock contained in the car. Defendant had no right to handle this stock in this manner and hold the plaintiff responsible for this deduction. When it received the car and sold and reconsigned it to another party, it was bound for the contract price, unless it could be shown by positive testimony that the stock was not up to grade, and in that case there should have been a proper inspection and examination. There was nothing in the contract that forbade the plaintiff to include glued stock in the shipment. Defendant may have sold the Cleveland Cooperage Company a carload of heading that could not include glued stock and may have undertaken to fill the order with the car that it had bought and received from the plaintiff and which did contain some glued stock; but plaintiff cannot be held liable on account of the failure of defendant's consignee to accept the car when there was no such restriction in the order which defendant placed with plaintiff. Furthermore, there is no testimony except hearsay that the Cleveland Cooperage Company refused to pay the full purchase price for this car on account of it containing some glued stock. When the defendant complained to the plaintiff that its consignee had refused to pay for the glued stock contained in the car, the plaintiff offered to assist in disposing of this stock for defendant's account. It found a customer for it, but was unable to get it from the Cleveland Cooperage Company. Plaintiff was under no obligation to assist defendant in disposing of the stock, and made the effort purely as a matter of accommodation. Defendant is therefore liable for the contract price of this car, or $1,468.48, and the judgment of the lower court is therefore correct.

### THE PHILADELPHIA CAR

This car was ordered according to sample submitted. When it reached Philadelphia, the defendant refused to accept or receive it and assigned as a reason the alleged fact that the stock did not come up to the grade of the sample submitted. The order was for No. 2 heading. Plaintiff's witness, Harry A. Wellford, secretary, inspected the car as it was being loaded, and swears positively that it was all up to grade. There is no testimony to the contrary. Defendant cannot escape liability for this car on its simple statement that a customer turned it down because it did not come up to the grade or quality of the sample submitted.

After the defendant refused this car, the plaintiff took charge of it, and disposed of it for the account of the defendant. It had a perfect right to do this. It was sold and delivered as No. 2 heading. Deducting from the price which plaintiff received for the car the freight and expenses incurred because of defendant's failure to receive it, the net amount received was $1,049.30, or $420.71 less than the price agreed upon by plaintiff and defendant. The judgment of the lower court for $420.71, balance due on this car, is therefore correct.

Since we hold that plaintiff is entitled to judgment for the full contract price of the Cleveland car, and for $420.71 as the balance due on the Philadelphia car, the defendant can have no just claim for any amount on its reconventional demand.

For the reasons assigned, the judgment appealed from is affirmed, with all costs of both courts.