90 So.2d 797

PILLSBURY MILLS, Inc.

v.

Dewey CHEHARDY, d/b/a Chehardy's Store.

No. 42676.

Nov. 5, 1956.

Joseph D. Lupo, Independence, Ponder & Ponder, Amite, for appellant.

Iddo Pittman, Jr., Hammond, for appellee.

MOISE, Justice.

■ Plaintiff brought suit against the defendant, claiming that there was due him $10,071.48, on an open account. He prayed for legal interest, from April 22, 1945, until paid. The defendant answered, and pleaded in reconvention, that plaintiff was indebted unto him, in the amount of $28,-477.76. He claimed that there was a set-off due him, and prayed for judgment, in the amount of $18,406.28. It is self-evident that by claiming a set-off, defendant judicially admitted the correctness of plaintiff's demand. Articles 2207, 2208, 2209, LSA–Revised Civil Code; Jackson v. Taylor Bros. Garage, La.App., 1st Circuit, 1941, 4 So.2d 41; Chickasaw Wood Products Company v. Vail-Donaldson Company, 2d Circuit, 1932, 19 La.App. 315, 138 So. 680, (transferred 1931), 173 La. 59, 136 So. 87; Young v. Williamson, 2d Circuit, 1931, 16 La.App. 406, 133 So. 807; Ashley v. Sholars, 1870, 22 La.Ann. 442.

■ Defendant admitted on cross examination, that the claim of plaintiff, as set forth in the itemized statement attached to the petition, was correct. The burden was on the defendant to establish, with a reasonable certainty, the demands made in reconvention. Stringfellow v. Nowlin Bros., 157 La. 683, 102 So. 869; Butler v. Bryant, La.App., 75 So.2d 519; Barbara, Inc. v. Billelo, 212 La. 937, 33 So.2d 689.

We have examined the record, and arrived at the conclusion, that the findings of the trial judge are correct. His reasons for judgment are as follows:

"This is a suit brought by Pillsbury Mills, Inc, against Dewey. Chehardy for the sum of $10,071.48 with legal interest from April 22nd 1954, until paid, covering goods, wares, and merchandise mainly chicken feed, sold by plaintiff to defendant.

"The defendant answered denying the purchase and correctness of the account for lack of information and sets up that he refused to pay the account as the plaintiff is indebted unto him in the sum of $28,477.76 and that there is a net offset due him against their claim of $18,406.28.

"The defendant predicates this defense on the allegations that the plaintiff had sponsored a planned program for the increased sales of feed by establishing a project for producing eggs for hatchery purposes and that he is entitled to judgment in reconvention for the sum of $28,477.76 being the value of eggs sold and delivered through the hatchery alleged to have been selected and approved by the plaintiff, which eggs were not paid for. Defendant claims that the Pillsbury Mills induced them to ship their eggs to Mitchum's Hatchery, Hatties-burg Miss, and that they did not give defendant the correct information about the financial condition of Mitchum's Hatchery, and claim that they are entitled to recover because of the willful acts, misleading statements, misdirection and representations that the defendant would not suffer any loss in the alleged plan and set up, and that they are entitled to recover in tort. The defendant prays for judgment for $28,477.76 and asks that there be judgment rejecting plaintiff's demands and judgment rendered in favor of the defendant for the $18,406.28 which is the difference between the amount claimed in the reconventional demand of $28,-477.76 less the amount of plaintiff's claim of $10,071.48.

"The case was tried and submitted to the Court on these issues.

"The defendant admitted the purchase of the feed and the correctness of the account. He attempted to claim credits for $452.79 worth of feed but there was no allegation in the petition and the Court sustained the objection. The defendant had tried to offset the claim of plaintiff alleged in its petition against defendant's reconventional demand which is an unquestioned admission of the correctness of it.

"Therefore, the Court is bound to render judgment in favor of the plain-

tiff and against the defendant for the sum of $10,071.48 with legal interest from April 22, 1954 until paid.

"This brings us to the reconventional demand of the defendant, This demand is set up in Defendant Ex. 4 and consists of eggs picked up and never paid for by John Thomas Mitchum Jr. dba Mitchum-Schmell Hatchery, from October 20th 1953, through March 9th 1954, amounting to a total sum of $14,103.33 and of eggs picked up and paid for with NSF checks from January 9 1954, through February 1, 1954, amounting to $15,383.85. Against that, the defendant alleges credits for Roosters and chicks sold amounting to $1009.42 leaving a net balance of $28,477.76. Included in the checks issued are two, numbered 5783 and 5784, dated February 1, 1954, for $7000.00 and $4000.00 respectively, which represent money loaned by Mr. Chehardy to Mr. Mitchum.

"The Court finds from the testimony that Mr. Wallace Ramsey sales manager for the southeast Territory of Pillsbury Mills, was contacted by Mr. Chehardy about going into the chicken business. The date is not disclosed by the testimony but it happened either in the latter part of 1952 or early part of 1953. Mr. Ramsey as sales representative for the plaintiff, was interested in selling feed and Mr. Chehardy was interested in retailing the feed to the farmers who would raise chickens and dispose of the eggs. He felt that this would not only help his business but would help the community by providing a market for poultry and build up an industry in the community of Independence.

"As a result of their discussions, Mr. Ramsey suggested Mr. John T. Mitchum Jr., who seemed at that time to have been operating the Mitchum-Schmell Hatchery at Hattiesburg, Miss. Mr. Mitchum was in partnership at that time with his father-in-law, a man named Schmell. It seems that the Mitchum-Schmell Hatchery had been doing business also with Pillsbury Mills and was interested in enlarging its operations by developing a poultry business in Louisiana.

"Mr. Ramsey, in the course of his business, informed Mr. Mitchum of Mr. Chehardy's desire to get in the poultry business and suggested that he contact him. Mr. Mitchum contacted Mr. Chehardy of Independence and had several meetings with Mr. Chehardy and some of the chicken farmers or prospective farmers, and either Mr. Ramsey or Mr. Huck, the area salesman for plaintiff, were present in some of these meetings, as a result a good many farmers were induced to sign a contract identical with the one

offered in evidence and marked D No. 2 signed by one Edgar Morgan. This contract is between Mr. Mitchum and the farmer. The contract provides that the farmer agrees to follow the feeding, housing and general management, program recommended and approved by Mitchum.

"The farmers then purchased the chicks, started in the poultry business, shipping their eggs to Mr. Mitchum, purchasing their feed at retail from Mr. Chehardy, who, in turn, purchased the feed at wholesale from the plaintiff. Sometime after the initiation of this program, Mr. Schmell seems to have withdrawn from the firm if he was ever in it, and Mr. Mitchum began to get in financial difficulties. There were various conferences and meetings held to try and solve the situation between Mr. Mitchum and his attorney and plaintiff and Mr. Chehardy and his attorney, but no definite settlement was ever finally agreed upon. In the meantime, Mr. Mitchum defaulted on his payments and Mr. Chehardy quit doing business with him and began to sell the eggs to some other person.

"Mr. Chehardy had some $9000.00 worth of notes in his possession signed by the farmers although they were not endorsed by Mitchum. Finally, in the spring of 1954, Chehardy sued Mitch- um in the Circuit Court of Forrest County, Mississippi, and obtained an agreed judgment against Mitchum for the sum of $28,488.76 with 6% interest per annum until paid and all costs. This judgment was dated May 18, 1954, There is nothing in the judgment to show any reservation of Chehardy's rights against Pillsbury Mills, Inc and the original complaint is not before the Court, and no proof offered that any reservation was made in the original complaint. Pillsbury Mills Inc, was not made a party to this suit.

"On or about February 1, 1954, Mr. Chehardy made a personal loan of $11,000.00 to Mr. Mitchum, which loan was made after Mr. Mitchum's financial condition was getting in bad shape and after several conferences and particularly one at Ardillo's Restaurant in Amite, La. held to try to come to some settlement of Mitchum's liability. Mr. Chehardy made no investigation of Mr. Mitchum's financial condition from anyone at the time he made this loan. He testified that he went into the business solely on the alleged representations of the plaintiff as to Mr. Mitchum's financial condition and he made the loan of $11,000.00 relying on the original recommendation.

"The Court does not feel that the defendant has sustained its allegations as to any willfull mismanagement of

misrepresentations by the plaintiff. While it is true that Mr. Ramsey did suggest Mr. Mitchum as a hatchery to do business with, and according to Chehardy gave as a reason that Pillsbury had enough confidence in him to extend him credit up to $90,000.00. This fact alone should have put Chehardy on notice that Mitchum had to be financed by someone to carry on his operations. There is no evidence in the record to show that Mr. Ramsey had the authority or did, in fact, guarantee the account. In order for a party to be held responsible for a third person's deeds the promise must be in writing. No doubt at the time Mr. Ramsey did think Mitchum was a good hatchery dealer for Mr. Chehardy to do business with, but the Court cannot conceive of a man who has had the success in business that Mr. Chehardy has, going into a business of this size without getting a credit report or more information concerning Mr. Mitchum's financial stability.

"In all of the dealings between the farmers and Mr. Chehardy and Mitchum, the representative of Pillsbury Mills, Viz: Mr. Huck was present only in an advisory capacity. Pillsbury Mills was not a party to any of the contracts. At a time prior to the delivery of most of the eggs unpaid for as shown by Def. Ex 4 Mr. Chehardy knew the precarious financial condition of Mitchum, and I think it was his duty to have taken steps to protect himself.

"Certainly the advance of $11,000.00 made by Chehardy on February 1, 1954, no matter for what use it was ultimately made by Mitchum, was made long after Chehardy knew of Mitchum's financial difficulties.

"Even had Pillsbury given statements as to Mr. Mitchum's responsibility, clearly through the months that passed after the initiation of this program, the defendant had sufficient information to be put on his guard concerning Mitchum's condition and could not hold plaintiff to the original recommendation made approximately a year before.

"The defendant claims that the plaintiff had knowledge of Mitchum's precarious condition and should have informed them. There is no evidence in the record to substantiate this. It seems that Pillsbury Mills discovered Mitchum's condition about the same time Mr. Chehardy did and they began to curtail their credit. I think they had a right to assume that a business man like Mr. Chehardy would realize the condition and govern himself accordingly. There was no legal reason shown why, granted that plain-

tiff knew of Mitchum's condition, they should have informed Chehardy. Likewise, there is no evidence that Mr. Ramsey or any of the representatives of Pillsbury deliberately set out to induce Mr. Chehardy to go into a business which they knew would result in a financial loss to Mr. Chehardy, just for the sake of selling him more feed. Business men do not go into deals like this, especially when they are heavy creditors themselves, and from the evidence it appears that plaintiff and defendant were the two biggest creditors of Mitchum.

"While it has not been referred to by either party in the briefs, the fact that the defendant obtained a judgment against Mitchum for the amount of its claim without mentioning or making plaintiff a party to the suit or reserving his rights against plaintiff would be a bar to any claim against them. If there had been a conspiracy between Mitchum and Pillsbury Mills to induce Chehardy to go into this business for the purpose of beating him out of the cost of feed and the value of the eggs obtained, clearly both parties to the conspiracy should have been made parties to that original suit in Mississippi or at least a reservation of their rights made in the complaint.

"For these reasons the Court is going to render a judgment in favor of the plaintiff as prayed for and rejecting the reconventional demand of the defendant, all at the cost of the defendant."

The defendant, plaintiff in reconvention, pleaded joint venture in this Court. As a general rule, this Court does not consider defenses raised for the first time on appeal. Lindner v. Cotonio, 175 La. 352, 143 So. 286. However, since defendant has made so many intimations in the reconventional demand, we have studied the record to determine whether a joint adventure existed between the parties.

As between the parties, joint adventures arise only where the parties intended the relationship to exist. They are ultimately predicated upon contract either express or implied. Daspit v. Sinclair Refining Co., 199 La. 441, 6 So.2d 341. Likewise, there must be an equal right to direct and govern the movements and conduct of each other in respect to the undertaking, and each party must have some voice and right to be heard, in the control or management. Hawkins v. Travelers Indemnity Co., La.App., 73 So.2d 348.

No such relationship existed between Chehardy and Pillsbury Mills, Inc.

Therefore, the plea of joint adventure is without merit.

For the reasons assigned, the judgment of the trial court is affirmed at defendant's cost.

PONDER, J., recused.