GLADNEY, Judge.
William J. Knighton brought this suit against Ben Beckham, Jr. to recover one-fourth (14) of defendant’s share of profits obtained from the promotion and operation of a television station in Shreveport, Louisiana. The claim is presented on the basis that plaintiff participated in a joint venture as a silent partner of the defendant. It is asserted that a verbal contract was entered into under which Knighton would be “carried” by Beckham for one fourth of the latter’s interest in the undertaking. Alternative relief is sought on a quantum meruit basis. The trial court, after disposing of a number of preliminary pleadings, decided the case on the merits in favor of the defendant by rejecting plaintiff’s demands. This appeal followed.
The decision of the trial court undoubtedly was predicated on plaintiff’s failure to establish by a preponderance of the evidence the existence of the oral agreement, or his right to recover on a quantum meruit basis.
The circumstances relating to the agreement are not controverted except as to whether or not there was an expressed oral understanding between Beckham and Knighton to the effect that the latter would be “carried” for the interest claimed. The testimony of both parties on this point is in direct conflict. Thus, it becomes necessary to determine if, in fact, there was such an agreement made between the parties.
Knighton and Beckham were associated in several joint ventures involving real estate promotions, which association commenced in the year 1947. Beckham admitted that he financed these ventures and “carried” Knighton therein for a one-fourth interest which Beckham declared was fully earned by Knighton who contributed valuable services. These several business ventures between the parties were concluded by a written settlement between Knighton and Beckham, dated January 31, 1956-, This settlement affected all transactions of the parties excluding only the claim, if any, which Knighton might have against B'en Beckham, Jr. “in connection with television in or near Shreveport, Louisiana * Reference to this agreement discloses it has no other importance than at that time Knighton had, or believed he had, a claim *234 against Beckham, and Beckham denied the existence of such a claim. As plaintiff relies on a number of events and circumstances, in order to establish the business relationship which he asserts resulted in the joint venture, we review briefly his testimony of such events, related in chronological order. In 1948 Knighton and Beckham became acquainted with certain parties interested in television, which, at that time, was in its infancy. These parties included a sales engineer of the Allen B. Dumont Laboratories in East Patterson, New Jersey, an association with W. Harry Johnson, who made application for certain television permits through a firm of attorneys in Dallas, Texas. On May 17, 1948, an application for the Fairfield Manor Television Company was filed before the Federal Communications Commission by Ben Beckham, Jr. and Knighton testified that in that venture Beckham agreed to carry him for a one-fourth interest therein. In the latter part of 1948, the Federal Communications Commission froze all applications for television permits and it was not until 1952 that applications for permits were again received and the freeze order lifted. It appears that new forms were required by the Federal Communications Commission and new applications were advised.
Knighton testified that in May of 1952 he put Beckham in contact with an attorney in Washington, Henry A. Dudley, who, in turn, introduced plaintiff and defendant to Henry B. Weaver, an attorney specializing in matters coming before the Federal Communications Commission. It was determined by Weaver that the Fairfield Manor Television application was dead, and that a new application should be filed to meet new requirements of the Commission. On June 20, 1952, articles of partnership of the Shreveport Television Company were executed by Beckham, Don George and Carter Henderson, Keith Pyburn and J. C. Smith, and later Henry Linam was included. Knighton admitted that he was not a member of this partnership. On October 5, 1954, Beckham wrote to Knighton, offering him a part of the television deal if he would put up money for it. This was refused. The testimony of Henry Dudley identified a letter from Knighton to Dudley, dated October 15, 1952. This letter was written in response to a letter addressed by Dudley to Ben Beckham, Jr., a copy of which was mailed to Knighton, reminding Beckham that the fee of Mr. Weaver of $750.00 and some expenses, had been incurred, and was unpaid. Knighton wrote that he was surprised that Beckham and George had let the matter drag and stated:
“I withdrew from this proposition because I saw the amount of money and delay involved and as we were preparing to drill some wells I felt I could best devote my efforts to this operation but I wanted to help Ben and Don George to get this undertaking under way and I was willing to come to Washington to assist them any way possible to expedite this filing.”
The letter dealt with the application of Beckham and George under the name of Shreveport Television Company and plainly declares the writer had no further interest in this matter. However, plaintiff attempted to avoid the effect of his letter by testifying that his mission had been accomplished. That is to say, he had performed his services and that he had no identification with the Shreveport Television Company, his only interest being with Beck-ham. This .answer hardly meets the impact of the above quotation.
The defendant strenuously denied the existence of any oral agreement to carry Knighton for any interest in connection with the Shreveport Television Company application, and insists that any services or accommodations rendered by Knighton were purely of a gratuitous nature and were intended as such. Although Knighton testified that his agreement with Beckham was definite and exact, the testimony of the parties who dealt with the application for the television permit clearly indicates that Knighton took no active part in connection *235 with securing the franchise or establishing and operating the television station which became known as KSLA Channel 12. Weaver, the attorney, who handled all proceedings which terminated successfully, deposed that all of his dealings after the abandonment of the Fairfield Manor application, were entirely with Beckham and Don George. Further testimony was given by Weaver to the effect that Knighton was not listed as an interested party in the application. He testified that the rules of the Commission require a disclosure of any person whatever as having any interest in the application, and failure to disclose such an interest would constitute a violation of the rules, and, in his opinion, amount to fraud.
Counsel for appellant earnestly asserts that the positive testimony of Knighton and the admissions of Beckham, coupled with the long course of dealing between the parties, is sufficient to establish the oral contract. To the contrary, it is argued that appellant has entirely failed to establish such an agreement and appellee points to the record as showing a lack of corroboration on any element of plaintiff’s claim, the lack of any evidence to indicate that plaintiff contributed materially to the enterprise in the form of services, work, interest, monetary contributions, or obligation to assume any possible loss, and the staleness of the claim and the long delay in asserting any action in the court.
We observe the testimony of plaintiff and defendant is directly in conflict as to the existence of the verbal contract, and the trial court was required to consider the credibility of the testimony of the plaintiff and defendant. In such matters the decision of the trial judge is entitled to great weight and will not be disturbed unless there is manifest error. Zuzak v. Freyer, La.App., 147 So.2d 72 (2d Cir.1962).
In the cited case this court was confronted with an issue involving proof of a contract of an alleged joint venture.
The holding therein seems apposite to the instant case. We said:
“The record fails to show a continuing partnership between plaintiff and defendant, as defined by LSA-C.C. art. 2801. To the contrary, we find there were several separate joint ventures between the parties. In the absence of an agreement, therefore, the defendant may not be required to account to plaintiff for services rendered to Eden Gardens, Inc. Sheridan v. LeQuire, La.App., 15 So.2d 118 (1st Cir.1943); Pillsbury Mills, Inc. v. Chehardy, 231 La. 111, 90 So.2d 797 (1956); Walker v. Delahoussaye, La.App., 116 So.2d 884 (1st Cir.1959). It was incumbent upon Zuzak to establish the existence of the contract under which he claims, by a preponderance of the evidence. The issue is a question of fact and was properly determined by the trial court, which was in a better position than we to adjudicate the conflicting testimony. We think of particular significance herein is the rule that a trial court’s findings on questions of fact should not be disturbed unless manifestly erroneous, and especially is this rule applicable when the decision rests upon the credibility of an important witness. Fouquier v. Fouquier, 231 La. 430, 91 So.2d 591 (1956).”
We find plaintiff has not made due proof of the alleged verbal agreement, nor can we sustain appellant’s claim for services allegedly rendered on a quantum meruit basis. The record is void of proof as to the value of any such services. In Mid-State Tile Company v. Chaudoir, La.App., 77 So. 2d 552, (2d Cir.1955), we said:
“The action upon quantum meruit finds sanction in our LSA-Civil Code, especially under articles 2293 and 2294, wherein recovery may be had upon an obligation implied in law for services which redound to the benefit of one where there is no agreement which has the dignity of a contract. It fol *236 lows, however, that before the action can succeed it is incumbent upon plaintiff to show that there is an equitable reason for recovery and the services so rendered have inured to the benefit of the one for whom performed. It has repeatedly been held that where the services are not to the advantage of the defendant the latter cannot be held. See Biedenharn v. Waters, 1930, 169 La. 1006, 126 So. 508; Granger v. Fontenot, La.App.1941, 3 So.2d 215; Levey v. Levenson, La.App.1947, 30 So.2d 158; Willis v. Mills Tooke Properties, Inc., La.App.1949, 42 So.2d 548.”
It is our opinion that appellant has failed to establish the existence of a contract which would entitle him to share in the fruits of a joint venture, and has likewise failed to establish his right to recover damages on a quantum meruit basis. The judgment from which appealed will, accordingly, be affirmed at appellant’s cost.