BOLIN, Judge.
Kenneth M. Ferris filed this workmen’s compensation suit against two roofing contractors and the compensation insurer of each, seeking total and permanent disability benefits for injuries allegedly received while working on a roofing job in the City of Monroe. After numerous pleadings were filed, involving third party plaintiffs and defendants, but before trial of the case, plaintiff settled his claim with Billy Woods, d/b/a Dixie Roofing and Sheet Metal Works, and Woods’ insurer, Employers-Commercial Union Insurance Company of America, by a court approved compromise agreement wherein plaintiff accepted the sum of $3,500 in addition to amounts already paid, with legal interest and cost. In return, plaintiff released and discharged Dixie Roofing and its insurer from all claims arising from the accident upon which the claim was based. Dixie and Employers-Commercial reserved all rights they might have under their third party petition against Shaw and Rockwood Insurance for indemnity or, alternatively, contribution for one-half the amount paid under the compromise.
The case went to trial on third-party plaintiffs’ petition against third-party defendants, Shaw and Rockwood. The trial judge assigned written reasons for his decision and held the relationship between Shaw and Woods was that of contractor and subcontractor, rather than joint ven-turers, and denied Woods’ insurer its claim for indemnity or contribution for one-half of the amount paid Ferris. From this judgment Woods and Employers-Commercial appeal. We affirm the judgment.
There is no question as to the initial liability of both Woods and Shaw to plaintiff as an employee. The issue between the insurance companies turns on the nature of the relationship between Woods and Shaw; i. e., did Shaw engage Woods as a subcontractor or was the association between the two roofers in the nature of a partnership or joint venture? If the agreement was a subcontract Woods and his compensation insurer were responsible to Ferris for workmen’s compensation with no right of contribution from Shaw or his insurer. See Louisiana Revised Statutes 23:1061, 1062 and 1063. However, if the parties were engaged in a joint venture they are liable in solido for the workmen’s compensation claim of their employee, but Woods and his insurer may claim contribution from Shaw and Rockwood. See Louisiana Civil Code Articles 2103 and 2104.
Prior to the accident Shaw had contracted to do roofing work on a group of apartment buildings. However, due to an excess of commitments he found he was unable to perform the work with his own crew and he orally contracted with Woods, another roofing contractor, to do the work on the apartment project. Ferris was employed by Woods to help with the roofing during the course of which plaintiff received the injuries upon which the suit was originally based.
The record is brief and the testimony is uncontradicted. Both Woods and Shaw testified quite openly and frankly. From the evidence it appears that this was neither the first nor the last time that Shaw, finding himself with an overabundance of work, had called upon Woods to complete a project. The testimony relative to the agreement between Shaw and Woods was that this was an informal, oral agreement; that Shaw asked Woods to “help” him with the job; that Woods agreed to do so; that Shaw would finance the job and the profit or loss would be divided equally between the parties; that Woods would draw no salary while performing the job but would submit a weekly account for the hours worked by his employees and Shaw would *387 make a check payable to Woods to cover the entire weekly payroll; that Shaw came on the premises a number of times and made suggestions to Woods about the work but there was no occasion for him to fire personnel nor to take an active part in the operation; that Shaw had the right to direct the employees as to how to do the work, but he testified that if he had exercised this right he would have done so through Woods.
Employers-Commercial contends that, whatever their separate activities may have been, Woods and Shaw were partners on this job since they equally had the right to control and had agreed to share equally the profits or losses. Thus it is argued plaintiff was an employee of a partnership or joint venture. Authorities relied on are: Babineaux v. Southeastern Drilling Corp. (La.App. 3d Cir. 1965) 170 So.2d 518; Krouse v. Parnell, Inc., (La.App. 2d Cir. 1971) 248 So.2d 854; Frazell v. United States (1963) 213 F.Supp. 457; Malone, Louisiana Compensation Law and Practice, Section 58.
On the other hand Shaw and Rockwood contend that Shaw merely sublet the job to Woods; that Woods was only under Shaw’s control as to the result; that Woods’ agreement to share in the profits or losses was the consideration for the subcontract and did not indicate an intention to form a verbal partnership or joint venture. Authorities relied upon by these parties are: Pillsbury Mills, Inc. v. Chehardy, 231 La. 111, 90 So.2d 797 (1956); Hero & Co. v. Farnsworth Chambers, 236 La. 306, 107 So.2d 650 (1958); Walker v. Delahoussaye (La.App. 1st Cir. 1959) 116 So.2d 884; Sicard v. City of New Orleans, 248 La. 1090, 184 So.2d 21 (1966); Hussler v. Bogalusa Coca-Cola Bottling Co. (La.App. 1st Cir. 1968) 215 So.2d 921.
In passing upon the legal issues and the facts the trial judge, in a well written opinion, found:
“The mutuality of interest between Woods and Shaw in the work being performed is self-evident; and they did agree to share profits or losses equally. Under the jurisprudence, while these two factors are pertinent, even important, in determining the legal relationship, neither factor is conclusive. There is mutuality of interest in every engagement between two or more persons; and it is possible, perhaps frequent, that the sharing of profits (or losses) can be agreed upon as the consideration for an engagement without the intention of creating a partnership or joint venture. The jurisprudence clearly establishes that the critical factor in determining the ‘intent of the parties’ is the right of both parties to control the details of the undertaking.
“As previously stated, there was no actual agreement or even discussion between the parties here as to right of control or other factors; nor did occasions arise during the performance of the project to cause Shaw to exercise any direct control over employees or work detail. We are obliged, therefore, to determine the issue on the minimal facts which do exist.
“There is no doubt that Shaw intended to and did turn the performance over to Woods, who so understood and acted. Shaw visited the job on one or more occasions, but took no action and made no suggestions [to Woods’ employees] with respect to the work, it being clear that his visits were for observation only. Woods actually supervised all of the work, hired all the employees, kept all the records and attended to all details. In such circumstances, the Court cannot find with any degree of certainty that Shaw actually had, or that the parties intended for him to have, any right of control over any phase of the work other than the result. On this record, the relationship between the parties more nearly accords with that of contractor-subcon *388 tractor than partnership or joint venture.”
After careful study of the record and analysis of the authorities relied upon by both parties, we are in accord with the findings of the district judge and, accordingly, the judgment of the lower court is affirmed at appellants’ cost.