335 So.2d 95 (1976)
STATE of Louisiana, Through the SABINE RIVER AUTHORITY, Plaintiff-Appellee.
v.
Rupert L. LUCIUS, Jr., Defendant-Appellant.
No. 5441.
Court of Appeal of Louisiana, Third Circuit.
July 6, 1976.
Rehearing Denied August 4, 1976.
*97 Thomas A. Self, Many, for defendant-appellant.
Alvis J. Roche, Lake Charles, for plaintiff-appellee.
Before HOOD, MILLER and PAVY, JJ.
HOOD, Judge.
Plaintiff, State of Louisiana, through the Sabine River Authority, seeks a judgment enjoining defendants, Rupert L. Lucius, Jr., and Willie A. Williams, from using a roadway across an arm or inlet of the Toledo Bend Reservoir in Sabine Parish, ordering them to remove that roadway, and condemning them to pay damages to plaintiff in the event the roadway is not removed within the time allowed by the court. The trial judge rendered judgment in favor of plaintiff granting it the relief sought against defendant Lucius, but dismissing plaintiff's demands against Williams. Defendant Lucius has appealed.
Several issues are presented. The principal one is whether defendant Lucius had the right to construct a road across an arm or inlet of the Toledo Bend Reservoir, and whether he has the right to continue to maintain and use that road.
The construction of the Toledo Bend Dam on the Sabine River and the impounding of waters by that facility was a joint project of the states of Texas and Louisiana. The dam was completed and waters began being impounded in the Toledo Bend Reservoir in 1966. The normal pool stage of 172 feet above mean sea level was reached in April, 1968.
The Sabine River Authority, State of Louisiana, was created as an agency of this state by Act 261 of 1950 (LSA-R.S. 38:2321, et seq.). Pursuant to the power vested in it by that statute, Sabine acquired title to all lands in Louisiana which later were inundated by the above reservoir, and also all property lying between the contour of 172 feet above mean sea level, that being the normal pool stage, and the contour of 175 feet above mean sea level, or a distance of 50 feet running horizontally from the 172 foot contour, whichever is greater.
*98 Although Sabine owned the above described strip of land, extending landward at least 50 feet from the 172 foot contour, its policy was to lease back to the abutting landowner that part of the strip which extended from the shore of the reservoir to the landowner's property. That strip of land around the edge of the reservoir, 50 feet or more in width, was known as the "lease back" area. See Wright v. Sabine River Authority, 308 So.2d 402 (La.App. 3 Cir. 1975).
In 1971, and for some time prior thereto, defendant Lucius owned a tract of land comprising about 60 acres which abutted the Toledo Bend Reservoir. A ravine, constituting an arm or inlet of the reservoir, traversed the Lucius property from south to north, with the main part of the lake being located south and west of defendant's land. This ravine or arm of the reservoir divided or severed the Lucius property, the eastern part of that tract being on one side of the ravine and the western part of it being on the other. It thus was impossible to travel from the eastern to the western part of his land without crossing or going around the north end of that ravine or inlet. As already noted, Sabine owned all that part of the ravine which was below the 172 foot contour line, and it also owned the "lease back area," at least 50 feet wide, around that area of the lake.
The land located north of and adjacent to the Lucius property has been subdivided into blocks and lots, and it is known as the "Pine Bluffs Subdivision." J. L. Spiller, Jr., who testified at the trial, is a co-owner of that subdivision. The ravine or inlet which traverses and severs the Lucius property extends into the Pine Bluffs Subdivision.
During or prior to 1971 the Lucius property was subdivided into lots, some of which were located on the east side of the above ravine and the remainder were located on the west side of it. In 1971 and early in 1972, Lucius constructed a roadbed across the above ravine, obviously for the purpose of providing better access from the east to the west parts of his property. That road runs generally east and west and it is located near the north line of the Lucius property. The road is 18 or 20 feet wide, with shoulders about two feet wide on both sides. It is an oil treated sand road, compacted and built to provide an all-weather type of road surface. The inlet at the place where the road was constructed was about 100 feet wide from shore to shore. The roadway, of course, traversed not only the water-covered part of the inlet, but also the lease back areas on both sides of it. The inlet decreased in width as it extended north of the roadway, and it terminated in the Pine Bluffs Subdivision.
Prior to the construction of that road owners of property in the Pine Bluffs Subdivision had access by boat to the main part of the lake. After the road was built it was impossible for watercraft of any kind to travel north of that road, and thus the owners of property located immediately north of the Lucius tract were cut off from access by boat to the reservoir. Lucius installed a culvert under the road which permitted water to flow into and out of the north part of the inlet. Boats could not travel through that culvert, however, and the evidence indicates that debris which gets into the north part of the inlet cannot wash out into the lake, and that the north end of that inlet thus is beginning to sand in or to fill.
Shortly after the road was built Spiller made a complaint to Sabine that the owners of property in the Pine Bluffs Subdivision had been cut off from access to the lake. On April 11, 1972, R. D. Morgan, Chief Engineer for the Louisiana Department of Public Works, wrote to Lucius informing him that the road had been built without a permit, and demanding that he remove the embankment. A similar demand was made on Lucius by counsel for Sabine on January 23, 1973. The road has *99 not been removed and this suit was instituted on April 3, 1973.
Two other defendants were named in the original petition which was filed by plaintiff, and additional defendants, including Willie A. Williams, were impleaded in supplemental and amended petitions filed by Sabine. A number of exceptions were filed and ruled on by the trial court, and eventually the case went to trial solely on the demands made by Sabine against Lucius and Williams.
After trial, the trial judge rendered judgment on April 2, 1975, in favor of plaintiff, enjoining defendant Lucius from using the above roadway, ordering him to demolish and remove the roadway by June 2, 1975, authorizing plaintiff to remove it if defendant fails to do so within the specified time, and condemning defendant to pay to Sabine the sum of $2,556.00 in the event the roadway has not been removed by the above date. The judgment dismissed the suit as to Williams.
Defendant Lucius appealed. Plaintiff has not appealed, and the judgment dismissing the suit as to Williams thus is final as to that defendant.
Defendant contends primarily that before the road was constructed he obtained a "verbal permit" to build it, that "verbal permits were the rule of the day" at that time, that the Sabine River Authority personnel were aware of and acquiesced in his plans to build the road, and that he thus was duly authorized to construct a road at that location.
The "Official Manual of Policy, Rules and Regulations" of the Toledo Bend Dam and Reservoir was adopted by the Board of Commissioners on August 24, 1967. That manual provides that "written approval by permit" must be obtained before any alteration of the water line is made, or before any digging or moving of work on the lake bed or the lease back area is conducted. Verbal permits were granted and were sanctioned by the Board of Commissioners prior to March, 1970, but since that time written permits have been required. Lucius began constructing the above road in 1971. He has never applied for or obtained a written permit to do so.
Maynard Nelson, who was employed by the Sabine River Authority of Texas for 11 years but at that time was working as Assistant Project Supervisor for Administration for the Toledo Bend Project, contacted Lucius in 1971 for the purchase of a small strip of land which had no relation to the road involved here. Lucius informed Nelson at that time that he wanted to build a road across the above inlet, and he requested that Sabine furnish him with a culvert to put under that road. Nelson arranged to obtain a culvert for him, but he informed Lucius at that time that neither he nor the agencies for which he worked had authority to grant a permit for construction of a road on the Louisiana side of the reservoir, and that he would need a permit from the Sabine River Authority if we wanted to put it there. Nelson testified "I just told him that I could not grant him permission to put it there, and that before he could put it there he would need to get permits from the Sabine River Authority, State of Louisiana." Although Nelson later arranged to provide defendant with a culvert, Lucius obtained a culvert elsewhere and installed it before Nelson advised him of that fact.
Lucius argues that since Nelson, an official of the Toledo Bend Project, was aware of defendant's plan to construct the roadway and did not object, Nelson must be considered as having acquiesced in the construction of the road. We do not agree. Nelson had no authority to authorize or approve the construction of such a roadway, and he explained to Lucius that it would be necessary for him to obtain a permit from the Sabine River Authority, State of Louisiana, before any such road could be constructed. Sabine made demand upon Lucius to remove the road immediately *100 after it learned that it had been built. We find nothing in the record which indicates that Sabine acquiesced in the construction of that roadway.
Defendant contends next that Sabine now seeks to apply retroactively to him a permit procedure which it previously did not apply to an adjacent landowner, Spiller. He argues that Sabine thus is attempting to apply its rules in a discriminatory and unconstitutional manner, in violation of the equal protection of the law provision of the Fourteenth Amendment.
The evidence shows that in 1968, two years before Sabine set up a procedure for the issuance of written permits, Spiller discussed with the Chief Engineer, Morgan, the question of whether he could dredge out and deepen a part of the inlet. At Morgan's suggestion, he wrote a letter to Sabine making formal request for a permit to conduct that dredging. Spiller also discussed his proposed project with a state senator who was a member of the Board of Commissioners of Sabine River Authority, and with a state representative from that area, both of whom explained that Sabine did not have a formal permit procedure, and both approved his request for dredging out the inlet. With that authority, Spiller proceeded to dredge out a part of the inlet in 1968. His dredging operations, however, did not change the water line or the contour of the lake in any way, and it did not cut off water frontage from any other property. Lucius contends that since Spiller was authorized to do that dredging in 1968, he was entitled to construct a road across the same inlet in 1971 and 1972, without the necessity of obtaining a written permit for that work.
We cannot agree with plaintiff's argument. The above dredging operations were conducted by Spiller before a written permit procedure had been established. Spiller obtained a verbal permit before the work was begun, which was the only type of permit issued at that time. Written permits were required by the time Lucius constructed the above road in 1971 and 1972. Lucius, however, did not obtain a permit of any kind, either written or oral, before he began building that road. Even if Spiller should be held to have dredged the inlet in 1968 without proper authority, that circumstance does not bar Sabine thereafter from establishing a permit procedure and from enforcing its rules. We also note, although we do not consider it to be material here, that the work done by Spiller did not change the water line of the reservior, as did the construction of the road by Lucius.
Defendant challenges the right of Sabine to institute this suit, contending that its purpose is principally to serve the private interests of the owners of Pine Bluffs Subdivision. He argues that the real party at interest is Spiller, and not Sabine River Authority. We do not agree. The Sabine River authority is charged with the duty of providing for "the preservation of the equitable rights of the people of the different sections of the watershed area, in the beneficial use of the waters of the Sabine River and its tributary streams." LSA-R.S. 38:2325. We think this includes the right to require the removal of a road which blocks off an arm or inlet of the reservoir, thus depriving owners of property lying beyond that road of access by water to the lake.
An issue is presented as to whether the institution of this suit was authorized by the Board of Commissioners of the Sabine River Authority. Defendant contends that the suit was instituted "only on the authority of a low level ministerial employee of the Sabine River Authority," and that the record contains no evidence to show that the Board of Commissioners formally authorized this action.
The plaintiff is "State of Louisiana, through the Sabine River Authority." The law provides that that authority is an agency and instrumentality of the State of *101 Louisiana, that it is a corporation and body politic and corporate, that it is invested with all powers conferred by law upon other corporations of like character, and that it shall have and possess the authority to sue and be sued. LSA-R.S. 38:2324.
The law is settled that a corporation may sue in its own name, without the designation of any officer thereof, and in such case it appears through its attorneys whose authority is presumed. Community Chest v. Union Mission Association, 30 So.2d 131 (La.App. 2 Cir.1947). When an attorney at law appears in court to represent a litigant, there is a presumption that he is authorized to do so. Even the litigant whom the attorney claims to represent is affected by the presumption of authority, to the extent that strong proof of want of authority must be produced. Plaquemines Parish School Board v. Davis, 32 So. 2d 391 (La.App.Orl.1947).
There is a strong presumption that the attorney who represents the plaintiff in this suit was authorized to do so. Plaintiff Sabine does not question that authority. The burden rests on defendant to produce "strong proof" to show that the attorney who filed the suit for Sabine does not have authority to do so. No such proof has been presented. Two substantial employees of Sabine testified at the trial, and Sabine thus must be charged with notice of the fact that the suit has been filed. The Board of Commissioners has not taken any steps to dismiss the suit, but on the contrary, it has reaped the benefits of it. The Sabine River Authority thus has acquiesced in the suit, and by doing so it must be held to have authorized it.
Defendant contends that the evidence fails to show that the road was constructed on an arm of the lake or on property which is owned by Sabine. We disagree. Several plats were introduced in evidence and those plats, together with the testimony of witnesses, show that the road was constructed across an arm or inlet of the reservoir, on property owned by Sabine.
Defendant also argues that the trial judge erred in refusing to grant a continuance on the day this suit eventually was tried on its merits. He contends that for that reason he is entitled to have the case remanded for a new trial.
The case was tried on June 25, 1974. On the day of the trial defendants filed a motion for a continuance, alleging that defendant Williams had been subpoenaed to appear as a witness on that day in a traffic accident criminal case in the City Court in Shreveport, and that "Williams desires and is entitled to participate fully in the trial of this civil case in Sabine Parish." Plaintiff thereupon dismissed the suit as to Williams, and the trial judge denied the motion for a continuance. Later in the trial plaintiff was permitted to withdraw that dismissal and to reinstate the case as to Williams, but no further request was made by defendants for a continuance. The judgment, of course, dismissed the suit as to Williams, and that judgment is now final, so Williams obviously was not prejudiced by the above ruling on the motion for continuance.
Lucius argues now that he is entitled to have the case remanded so that he can produce the testimony of his co-defendant, Williams. The record indicates that Lucius did not suggest at any time prior to or during the trial that he wanted to call Williams as a witness. He did not ask to hold the case open for his testimony, and he did not allege in his motion for a new trial that he wanted or needed Williams' statements. The first suggestion to the effect that he wanted Williams' testimony, so far as we have been able to find, is contained in the brief filed by defendant in this court.
The minutes of the court show that this case was originally scheduled to be tried on May 21, 1973, but that that fixing was set aside on that day by agreement of *102 counsel. Other fixings were set aside on May 23, 1973, and on March 6, 1974. On the last mentioned date it was scheduled for trial on April 5, 1974, but defendants filed a motion for continuance on April 2, which was granted by the trial court. It was refixed for trial on June 25, 1974, and as already noted defendants filed another motion for continuance on that date, which motion was denied by the trial judge.
A continuance may be granted in any case if there is good ground therefor. LSA-C.C.P. art. 1601. The granting or the refusal to grant a continuance under that article is left to the sound discretion of the trial judge, and his judgment on that issue should not be disturbed in the absence of a clear abuse of discretion. George v. George, 274 So.2d 494 (La.App. 3 Cir. 1973); Stablier v. Partin, 278 So.2d 537 (La.App. 1 Cir.1973).
In the instant suit, we find no abuse of discretion on the part of the trial judge in refusing to grant the motion for continuance which was filed by defendants on the day the case was scheduled for trial.
Defendant contends, finally, that the amount of damages awarded by the trial court, in the event he fails to remove the road within the time specified, was speculative, and that the award violated the Louisiana Public Contracts Law (LSA-R.S. 38:2211). Barton Rumsey, a professional civil engineer, surveyed the road and took cross-sections of it to determine the amount of dirt which was contained in the fill. With that information, he estimated that the cost of clearing the fill, or of removing the roadway, would be $2,556.00, that being the amount which was awarded by the trial court. The evidence thus supports the award, and we find that it is not speculative.
No authorities have been furnished to us indicating that the award made in this case violates the Louisiana Public Contracts Law. We conclude that there is no such violation.
Our ultimate conclusion is that defendant Lucius had no authority to construct the above road across an arm or inlet of the Toledo Bend Reservoir, and that plaintiff is entitled to the relief which it seeks and which was granted by the trial court. We have decided, however, that defendant should be allowed 60 days from the date this judgment becomes final within which to demolish and remove the roadway.
For the reasons assigned, the judgment appealed from is amended by deleting the words "by the date of June 2, 1975," and "by the day of June 2, 1975," where those words appear in the judgment, and by substituting in lieu of those words, in each of the places where they appear, the words "within sixty (60) days after this judgment becomes final." In all other respects, the judgment appealed from is affirmed. The costs of this appeal are assessed to defendant, Rupert L. Lucius, Jr.
AMENDED and AFFIRMED.