614 So.2d 1337 (1993)
Craig F. BURNS, et ux., Plaintiffs-Appellants,
v.
SABINE RIVER AUTHORITY, Defendant-Appellee.
No. 92-10.
Court of Appeal of Louisiana, Third Circuit.
March 3, 1993.
Writ Denied May 14, 1993.
Salter, Streete & Hale, Stephen R. Streete, Lake Charles, for plaintiffs/appellants.
James L. Davis, Many, for defendant/appellee.
Before DOUCET, YELVERTON, KNOLL, COOKS and SAUNDERS, JJ.
KNOLL, Judge.
Craig F. Burns and his wife, Lucy M. Burns, appeal the dismissal of their petition for mandatory injunction which they filed against the Sabine River Authority (hereafter Sabine). The object of the petition filed by Burns was to require Sabine to remove a roadway across an inlet of the Toledo Bend Reservoir which had existed since the early 1970's or, alternatively, to pay them damages for Sabine's failure to remove the roadway.
Central to Burns's action is a 1975 judgment acquired by Sabine against Rupert Lucius, Jr. In 1975 Sabine obtained a judgment against Lucius which enjoined him from using a roadway he erected across an arm or inlet of the Toledo Bend Reservoir which denied water access to Toledo Bend to those property owners in Pine Bluffs Subdivision north of the roadway. The judgment ordered Lucius to demolish and remove the roadway within 60 days; if Lucius failed to remove the roadway, the *1338 judgment further authorized Sabine to do so and condemned Lucius to pay Sabine $2,556 for the removal. This judgment was affirmed on appeal. State, Sabine River Authority v. Lucius, 335 So.2d 95 (La.App. 3rd Cir.1976). Even though Lucius never ceased using the roadway, Sabine chose not to enforce its judgment.
In 1985 Burns purchased four lots north of the roadway in the Pine Bluffs Subdivision. Burns instituted this suit when Sabine refused to enforce its judgment against Lucius. Sabine filed a peremptory exception of no cause of action to Burns's suit, contending that during the 13 years since the Lucius decision Burns's ancestors in title did not seek enforcement of the judgment. Sabine also moved for summary judgment, contending that the Burns property never had waterfront access. The trial court granted Sabine's peremptory exception of no cause of action, stating, "[T]he relief which plaintiffs seek is under the authority of a judgment which grants to defendant `permission' to take further action and the Court therefore finds that the exception of no cause of action filed as to a petition for a `mandatory injunction' is well-founded...." The trial court did not reach the issues presented by Sabine's motion for summary judgment. We reverse and remand, finding that Burns stated a cause of action based on a quasi contract.

BACKGROUND FACTS
As background for our treatment of the issues presented, we recall the facts enunciated earlier in the Lucius case at pages 97-98:
"The Sabine River Authority, State of Louisiana, was created as an agency of this state by Act 261 of 1950 (LSA-R.S. 38:2321, et seq.). Pursuant to the power vested in it by that statute, Sabine acquired title to all lands in Louisiana which later were inundated by the above reservoir, and also all property lying between the contour of 172 feet above mean sea level, that being the normal pool stage, and the contour of 175 feet above mean sea level, or a distance of 50 feet running horizontally from the 172 foot contour, whichever is greater.
Although Sabine owned the above described strip of land, extending landward at least 50 feet from the 172 foot contour, its policy was to lease back to the abutting landowner that part of the strip which extended from the shore of the reservoir to the landowner's property. That strip of land around the edge of the reservoir, 50 feet or more in width, was known as the `lease back' area.
In 1971, and for some time prior thereto, defendant Lucius owned a tract of land comprising about 60 acres which abutted the Toledo Bend Reservoir. A ravine, constituting an arm or inlet of the reservoir, traversed the Lucius property from south to north, with the main part of the lake being located south and west of defendant's land. This ravine or arm of the reservoir divided or severed the Lucius property, the eastern part of that tract being on one side of the ravine and the western part of it being on the other. It thus was impossible to travel from the eastern to the western part of his land without crossing or going around the north end of that ravine or inlet. As already noted, Sabine owned all that part of the ravine which was below the 172 foot contour line, and it also owned the `lease back area' at least 50 feet wide, around that area of the lake.
The land located north of and adjacent to the Lucius property has been subdivided into blocks and lots, and it is known as the `Pine Bluffs Subdivision.' J.L. Spiller, Jr., who testified at the trial, is a co-owner of that subdivision. The ravine or inlet which traverses and severs the Lucius property extends into the Pine Bluffs Subdivision.
During or prior to 1971 the Lucius property was subdivided into lots, some of which were located on the east side of the above ravine and the remainder were located on the west side of it. In 1971 and early 1972, Lucius constructed a roadbed across the above ravine, obviously for the purpose of providing better access from the east to the west parts of his property. That road runs generally *1339 east and west and it is located near the north line of the Lucius property. The road is 18 or 20 feet wide, with shoulders about two feet wide on both sides. It is an oil treated sand road, compacted and built to provide an all-weather type of road surface. The inlet at the place where the road was constructed was about 100 feet wide from shore to shore. The roadway, of course, traversed not only the water-covered part of the inlet, but also the lease back areas on both sides of it. The inlet decreased in width as it extended north of the roadway, and it terminated in the Pine Bluffs Subdivision.
Prior to the construction of that road owners of property in the Pine Bluffs Subdivision had access by boat to the main part of the lake. After the road was built it was impossible for watercraft of any kind to travel north of that road, and thus the owners of property located immediately north of the Lucius tract were cut off from access by boat to the reservoir. Lucius installed a culvert under the road which permitted water to flow into and out of the north part of the inlet. Boats could not travel through that culvert, however, and the evidence indicates that debris which gets into the north part of the inlet cannot wash out into the lake, and that the north end of that inlet thus is beginning to sand in or to fill."
After reviewing these facts in light of the applicable law, we ultimately concluded that Lucius had no authority to construct the road across an arm or inlet of the Toledo Bend Reservoir, that Sabine had the legal right to require the removal of the road which deprived the property owners lying beyond the road of water access to the lake, and that Sabine was entitled to judgment ordering the removal of the illegal roadway.
The "law of the case" is a policy by which an appellate court will not, on a subsequent appeal, reconsider its earlier ruling in the same case. That policy applies against those who were parties to the case when the prior decision was rendered and who had their day in court. Some reasons for applying the policy are: avoiding indefinite relitigation of the same issue; obtaining consistent results in the same litigation; fairness to both parties; and affording one opportunity for argument and decision of the matter at issue. Petition of Sewerage & Water Board of New Orleans, 278 So.2d 81 (La.1973); Day v. Campbell-Grosjean Roofing & Sh. Metal Corp., 260 La. 325, 256 So.2d 105 (1971).
Applying the law of the case doctrine to the present case, we find that Sabine is now bound by our earlier findings and holdings in Lucius.

NO CAUSE OF ACTION
In the present case, the basis for the trial court's dismissal of Burns's petition on a peremptory exception of no cause of action was its determination that the 1975 judgment only permitted Sabine to remove the roadway. Accordingly, if Sabine's authority was only permissive, it could decide not to enforce the removal of the roadway. Thus, Burns had no cause of action to require Sabine through a mandatory injunction to remove the roadway.
To the contrary, Burns argues that Sabine is charged with the legal duty to enforce its rules and regulations which require the removal of a roadway illegally placed across an inlet of the Toledo Bend Reservoir.
Sabine argued to the trial court that it chose not to enforce the judgment against Lucius because the roadway across the inlet "had probably become subject to servitude for road purposes used by many persons to get to their homes and camps." We cannot agree.
The management of another's affairs gives rise to a quasi contract. LSA-C.C. Art. 2295. Whether the owner be acquainted with the undertaking or ignorant of it, the quasi contractual relationship of negotiorum gestio occurs. Id. When the manager assumes the agency, he contracts the tacit engagement to continue the management he has begun and to complete it. Id. Planiol states that a gestion d'affaires is created in every case where a person accomplishes *1340 a juridical act in the interest of another without having been charged to do so. 2 M. Plainol, Civil Law Treatise pt. 2, no. 2273 at 308 (11th Ed.La.St.L.Inst. trans. 1959).
It is essential to negotiorum gestio that the manager be doing another's business, not his own business. Tate v. Dupuis, 195 So. 810 (La.App. 1st Cir.1940); Chance v. Stevens of Leesville, Inc., 491 So.2d 116 (La.App. 3rd Cir.1986), writ denied, 495 So.2d 302 (La.1986).
Based on the facts alleged in Burns's petition and reported in the Lucius decision, we find that the case sub judice presents a classic case of negotiorum gestio. At the time Sabine sued Lucius to remove the illegal roadway, it was acting to preserve the juridical rights of the landowners whose property lay beyond the road and bordered the inlet. Now Sabine is obliged to complete the management of that affair by enforcing the judgment it obtained as the gestor of the owners. Since Burns's ancestor in title, an active participant in the prior litigation with Lucius, directly benefitted from Sabine's legal action, we find it of no moment that Burns's identity was not known when Sabine undertook its management of the affairs of others. See, Comment, Management of the Affairs of Another, 36 Tul.L.Rev. 108 (1961). Accordingly, as a result of the quasi contract between Sabine and Burns, Sabine may now be required to remove the road.
Now, as we appreciate Sabine's argument, it is Sabine's further position that the Burns property in the Pine Bluffs Subdivision never had access to the water. The earlier Lucius opinion belies Sabine's argument. As stated in the facts thereof, the property owners in the Pine Bluffs Subdivision had access through the inlet by boat to the main part of the lake. Moreover, addressing Lucius's argument that the real parties in interest were the property owners of Pine Bluffs Subdivision, we held that Lucius's roadway deprived the property owners of access by water through the inlet to the lake. Accordingly, we concluded that Sabine had the right to require removal of the roadway erected illegally by Lucius so that water access to the lake would be restored to the property owners north of the roadway. Therefore we fail to see how Sabine can now state that the property of the Pine Bluffs Subdivision never had access to the reservoir through the inlet.
For the foregoing reasons, we reverse the trial court's dismissal of Burns's petition against the Sabine River Authority on the peremptory exception of no cause of action, and remand the case to the trial court for further proceedings. Costs of this appeal are assessed to the Sabine River Authority.
REVERSED AND REMANDED.
SAUNDERS, J., dissents and assigns reasons.
SAUNDERS, Judge, dissenting.
Plaintiffs filed this lawsuit seeking to force Sabine River Authority to enforce its judgment against Rupert Lucius, Jr. It was met with a peremptory exception of no cause of action which was granted by the trial court, stating:
"[T]he relief which plaintiffs seek is under the authority of a judgment which grants to defendant `permission' to take further action and the court therefore finds that the exception of no cause of action filed as to a petition for a `mandatory injunction' is well founded...."
The majority finds that Sabine had a non-discretionary duty to have Lucius' illegal roadway removed since the continued existence of the roadway adversely affected the plaintiffs' access rights. LSA-R.S. 38:2325 provides in pertinent part:
§ 2325. Powers
Said Authority shall have the power:
(2) To provide by adequate organization and administration for the preservation of the equitable rights of the people of the different sections of the watershed area, in the beneficial use of the waters of the Sabine River and its tributary streams;
(3) For storing, controlling, and conserving the waters of the Sabine River and its tributaries within and without the *1341 district, and the prevention of the escape of any such waters without the maximum of service to the public; for the prevention of devastation of lands from recurrent overflow and the protection of life and property in such district from uncontrolled flood waters;
From a reading of this part of the statute, I disagree with the majority's interpretation that the duty to remove the roadway was mandatory. The statute charges Sabine with the duty of providing for "the preservation of the equitable rights of the people of the different sections of the watershed area in the beneficial use of the waters of the Sabine River and its tributory streams." This language is permissive in nature and calls for the use of judgment and discretion by the commission. The fact that Sabine has the authority to seek removal of the road, does not mean that it should be forced to do so. In my opinion, whether or not to enforce the earlier judgment is a discretionary function rather than a ministerial function of the board.
Accordingly, I would affirm the judgment of the trial court.